420 So.2d 1356 (1982)
Lon STRONG, Executive Director of the Mississippi Department of Wildlife Conservation; State of Mississippi Department of Wildlife Conservation
v.
John BOSTICK, David Sparks, Tommy Cross, Davey Hunt, William Yates, Ronnie White, W.M. Jackson, Sammy Montgomery, Byron Bennefield, David Ray Williams, Leroy Hall, Russell Crum, Neal Stroupe, Bobby Trainum, Stevie Ewing, Trelis Petree, J.W. Moore, Donald Maples, Charles Hines, Charles Green, Jack V. Pickin, W.A. Stanfield, Frank Stubblefield and Paul Stubblefield.
No. 53649.
Supreme Court of Mississippi.
September 22, 1982.
Rehearing Denied November 10, 1982.
*1357 Bill Allain, Atty. Gen. by Stephen J. Kirchmayr, Sp. Asst. Atty. Gen., Jackson, for appellants.
J.B. Garretty, Corinth, for appellees.
Before WALKER, P.J., and BROOM and ROY NOBLE LEE, JJ.
ROY NOBLE LEE, Justice, for the Court:
The Mississippi Commission on Wildlife Conservation [Commission] promulgated and adopted a regulation (recommendation) at its May 22, 1981, meeting, which established the 1981-82 "Deer Gun Seasons" and therein precluded the use of dogs as an aid for hunting deer in certain areas of the state, particularly in north Mississippi.
John Bostick and twenty-three (23) other persons filed a petition for writ of certiorari in the Circuit Court of the Second Judicial District of Hinds County, Honorable Charles Barber, presiding, contending that the State of Mississippi Department of Wildlife Conservation [Department] be commanded to send up to the court all records, proceedings and minutes of the Commission concerning the establishment and promulgation of the said regulation, and, upon the hearing, that the court declare the regulation to be null and void insofar as it made illegal the hunting of deer with the aid of dogs in the areas prohibited by the regulation. Pertinent allegations of the petition for writ of certiorari follow:
V.
The Mississippi legislature has, by statute, set the seasons during which deer may be hunted and taken, and has prescribed the manner and means for such hunting and taking, and has not delegated the power to modify or change the said statutes except in an emergency or under urgent circumstances, and then only to the extent of closing or shortening such season.
VI.
The said regulation purports to make the act of hunting deer with the aid of a dog a criminal offense which may be punished by fine and/or imprisonment.
VII.
The commission has, by the adoption of such regulation, declared to be illegal that which the legislature has declared to be legal.
VIII.
Further, the said regulation is arbitrary, capricious, discriminatory and not based upon substantial evidence. The said regulation is overly broad, not based upon any exception authorized by law, and discriminates against the plaintiffs, *1358 and others similarly situated, in favor of other classes of deer hunters and other sections of the state.
The lower court granted the petition for writ of certiorari and held that the regulation prohibiting the use of dogs as a hunting aid in those areas of the state designated therein during the period December 19, 1981, through January 16, 1982, was void and should be rescinded and revoked for the following reasons:
II.
The Mississippi Department of Wildlife Conservation, an administrative agency of the State of Mississippi, failed to make any findings of fact in regard to the regulation in controversy.
III.
That the Court is of the opinion, based upon the record before it, that there is no substantial evidence to justify said regulation.
IV.
For that reason, it is not necessary, at this time, to reach the question as to whether or not the Mississippi Department of Wildlife Conservation has the authority to declare illegal the use of dogs as a hunting aid during the regular deer season, and defers ruling on that point, and as to whether or not the regulation was arbitrary, capricious and discriminatory.
Appellant raises several questions on this appeal, among them (1) that a demurrer should have been sustained, (2) that the wrong party was sued since the Department has no authority to adopt rules and regulations, and (3) that the proper party is the Commission which has authority to adopt rules and regulations and did adopt the regulation in controversy. We do not consider all the contentions presented in appellant's brief, but only three (3) questions which are essential to the disposition of the case.

I.
Are the questions moot because the period during which hunting deer with dogs was prohibited has expired?
Appellees comprise twenty-four (24) individuals residing in eleven (11) counties covered by the regulation. Seventeen (17) counties in north Mississippi, and Hinds County are affected by the regulation. There are no petitioners from the other seven (7) counties. They contend that the question is moot, since the hunting season and period, December 19, 1981, through January 18, 1982, has passed, and they have filed a motion to dismiss the appeal on that ground, and cite McDaniel v. Hurt, 88 Miss. 769, 41 So. 381 (1906) as authority that an appeal will not be entertained where no actual controversy is involved and a reversal would do no good. Appellees also argue that they have no desire to be burdened with the time and expense of an appeal on a moot question. Such argument finds no sympathy here.
That the questions involved in this case are of great public interest cannot be disputed. The record consists of five (5) volumes, most of which contain petitions and letters of interested citizens for or against hunting deer with dogs. The parties and the public are entitled to know whether or not the Department and Commission have the authority to promulgate and enforce regulations such as the one now before the Court, although the lower court declined to address that question.[1] If this Court did not address the questions on the ground of being moot, the matter would never be resolved. Each year (since 1946) the Commission (formerly Mississippi State Game and Fish Commission) has met in May and, among other things, considers or sets certain *1359 hunting seasons and adopts regulations for hunting, including deer hunting. On every such occasion appellees, or other persons, might be successful in prohibiting the enforcement of these regulations and, after the periods involved had expired, contend that the questions become moot. Thus, there would never be a resolution of the issues. In Sartin v. Barlow, 196 Miss. 159, 16 So.2d 372 (1944), the Court said:
While it is well established in this state, as well as elsewhere, that as a general rule an appeal will be dismissed when no useful purpose could be accomplished by entertaining it, when so far as concerns any practical ends to be served the decision upon the legal questions involved would be merely academic, it has, on the other hand, been broadly stated that the rule will not be applied when the question or questions involved are matters affecting the public interest. 3 Am.Jur., p. 310. That statement is made more accurate, however, by the further statement that there is an exception to the general rule as respects moot cases, when the question concerns a matter of such a nature that it would be distinctly detrimental to the public interest that there should be a failure by the dismissal to declare and enforce a rule for future conduct. See, text and authorities 4 C.J.S. Appeal and Error § 1354, pp. 1945-1947, note 24, and 38 C.J., p. 949, note 66... . [196 Miss. at 196-70, 16 So.2d at 376].
We think that the doctrine of "capable of repetition yet evading review" which has been enunciated by the United States Supreme Court beginning in 1911 with Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911), is sound jurisprudence. In Weinstein v. Bradford, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975), that Court stated the doctrine is limited to the situation where the following elements combine:
(1) The challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and
(2) There was a reasonable expectation that the same complaining party would be subject to the same action again. [423 U.S. at 149, 96 S.Ct. at 349, 46 L.Ed.2d at 353].
We think that the elements set forth in Weinstein are present in the case sub judice, and we adopt the doctrine of "capable of repetition yet evading review" and hold that the questions here are not moot.

II.
Did the Commission have the authority to promulgate the regulation and was it valid and enforceable?
On July 1, 1979, the State Game and Fish Commission became the Mississippi Commission on Wildlife Conservation which has exercised the duties and responsibilities of the Game and Fish Commission through the Bureau of Fisheries and Wildlife of the Mississippi Department of Wildlife Conservation. The powers and duties of the Commission are stated in Mississippi Code Annotated Section 49-1-29 (Supp. 1981), which comprises sixteen (16) subsections and consumes three (3) pages. For brevity, only the first two paragraphs are set forth:
The commission is hereby authorized to make such rules and regulations, inaugurate such studies and surveys, and establish such services as it may deem necessary to carry out the provisions and purposes of this chapter. Any violation of any of the provisions of this chapter or of any rules or regulations promulgated by the commission shall constitute a misdemeanor and be punished as hereinafter provided.
The commission shall also have authority:
(a) To close or shorten the open season as prescribed by law in cases of urgent emergency on any species of game birds, game or fur-bearing animals, reptiles, fish or amphibians, in any specified locality or localities, when it shall find after investigation and public hearing that such action is reasonably necessary to secure *1360 the perpetuation of any species of game birds, game or fur-bearing animals, reptiles, fish or amphibians and the maintenance of an adequate supply thereof. The statutes governing such subjects shall continue in full force and effect, except as further restricted and limited by the rules and regulations promulgated by the commission.
As will be discussed hereinafter, the record indicates that the deer population in the subject area of north Mississippi, after investigation and public hearing, had become dangerously low, and that the regulation prohibiting hunting with dogs was reasonably necessary for protection and perpetuation of the deer.
Mississippi Code Annotated § 49-7-31 (Supp. 1981) fixes the open seasons on game birds and game animals, i.e., when they may be lawfully hunted. However, the section expressly delegates to the commission seven (7) areas of authority in setting hunting seasons. For example: (1) the commission shall, in its discretion, fix the season on wild turkeys; (2) on deer, the commission may open the season not to exceed sixty (60) days in the aggregate between November 10 and January 15 in any county after public notice has been made and public hearing has been held concerning said season; (3) the commission is authorized to set and regulate the deer seasons on wildlife management areas administered by the commission; (4) the commission may permit the killing of doe deer in localities where it is necessary to thin the stock of existing deer; (5) the commission may designate areas of the state in which the killing of antlerless deer may be permitted or limited; (6) the commission may fix the open season on fur-bearing animals between November 1 and March 1 and for hunting opossums, raccoons and bobcats with dogs and guns by licensed hunters from October 1 to February 28; (7) provided, further, the game and fish commission may establish closed seasons on running, hunting, chasing, or pursuing with dogs of raccoon, opossums, or other wild animals or wild birds during turkey season in designated areas.
The section above simply grants the right to hunt during certain times of the year and does not define times and methods of hunting as illegal.
Reference is made to Mississippi Code Annotated § 49-7-37 (Supp. 1981), which establishes special open seasons on deer with falcons or hawks, bow and arrow, or primitive weapons, only to point out authority delegated to the commission in four instances: (1) "... The commission is authorized, in its discretion, to extend the special archery seasons on any public hunting projects, game refuges or prescribed areas having surplus deer populations ...;" (2) A special hunting season with primitive firearms to hunt deer is fixed between regular deer seasons in areas deemed by the commission to have surplus deer population; (3) The commission may designate areas of the state in which the killing of antlerless deer may be permitted or limited; and (4) The commission is "further authorized to make reasonable rules and regulations concerning said special seasons, concerning the use of falcons and hawks, and concerning bow and arrow and primitive firearms hunting in any season which it may deem necessary and proper."
Mississippi Code Annotated § 49-7-45 (Supp. 1981) complements Section 49-7-31 and declares certain acts to be unlawful, particularly those enumerated in seven (7) subsections. Subsection (a) of the act provides the following:
It shall be unlawful for any person:
(a) Except in the defense of person or property or in eradicating disease among animals, to hunt or chase or to shoot at or kill or to pursue with the intent to take, kill or wound any wild animal or wild bird with firearms or devices of similar description or through the use of traps or by nets or snares or by the use of dogs except during the open season, in the number, by the means and in the manner herein specifically permitted, and then *1361 only after first having secured a license and a license tag to so hunt or trap, as the case may be. No person shall hunt, take, kill or wound any game animal (except rabbits, opossums, raccoons or deer) or game birds by any means, except by the aid of a dog, the use of decoys and/or with a gun not larger than 10 gauge and capable of being fired from the shoulder. Nor shall any person hunt, take, wound or shoot at any game bird from a power boat, sailboat or any boat propelled otherwise than by hand, nor except in waters of the gulf coast from any sinkbox or battery.
The first part of subsection (a) makes it unlawful to hunt as indicated therein, except during open seasons and with a hunting license. The grammatical breakdown of the subsection follows:
(a) Except in the defense of person or property or in eradicating disease among animals
IT SHALL BE UNLAWFUL FOR ANY PERSON:
... to hunt or chase or to shoot at or kill or to pursue with the intent to take, kill or wound any wild animal or wild bird
with firearms or devices of similar description
(or)
through the use of traps or by nets or snares
(or)
by the use of dogs
except during the open season in the number, by the means and in the manner herein specifically permitted, and then only after first having secured a license and a license tag to so hunt or trap, as the case may be.
The statute attempts to cover every possible method of hunting and two exceptions  one at the beginning of the section and the other at the end  are created. They provide that the killing of any animal is prohibited unless (1) it is in defense of the person or property, or (2) during the open season with a hunting license. Therefore, the section cannot reasonably be read or construed to mean that the legislature specifically provided that dogs shall be hunted during the open deer season and that the regulation adopted by the Commission is in conflict with an express legislative act.
We are aware that administrative agencies have only such powers as are expressly granted to them or necessarily implied, and any such power exercised must be found within the four corners of the statute under which the agency operates. Mississippi Milk Commission v. Winn-Dixie, 235 So.2d 684 (Miss. 1970).
42 C.J.S. Implication at 405 (1944), discusses the matter:
The term is more restricted than mere "implication," it refers to a logical, not a physical, necessity, and implies that no other interpretation is permitted by the words of the instrument construed; and so has been defined as meaning an implication which results from so strong a probability of intention that an intention contrary to that imputed cannot be supposed; that which leaves no room for doubt; ... .
* * * * * *
The doctrine of "necessary implication" finds frequent application in the construction of statutes....
Mississippi Code Annotated § 49-4-1 (Supp. 1981) declared the purpose of the department as follows:
It is hereby declared to be the intent of the legislature to conserve, manage, develop and protect our natural resources and wildlife for the benefit of this and succeeding generations by reorganizing the natural resource and wildlife conservation functions of state government into the Mississippi Department of Natural Resources and the Mississippi Department of Wildlife Conservation thereby providing more effective organizations *1362 through which the methods of conserving, managing, development and protecting our natural resources and wildlife can be analyzed, coordinated and implemented.
In Russell v. State, 220 So.2d 334 (Miss. 1969),[2] the Court recognized that the power granted to the Mississippi State Game and Fish Commission (now Mississippi Commission on Wildlife Conservation), pursuant to Section 5844, Mississippi Code 1942 Annotated [now Mississippi Code Annotated § 49-1-29 (Supp. 1972)], to adopt rules and regulations in the area of game and fish conservation, a violation of which constitutes a misdemeanor, was not an unconstitutional delegation of law-making power. The Court said: "Legislation of this type has been held to violate neither the United States nor the Mississippi Constitution." [220 So.2d at 339], and cited Lacoste v. Department of Conservation, 263 U.S. 545, 44 S.Ct. 186, 68 L.Ed. 437 (1924) and Mississippi Milk Commission v. Vance, 240 Miss. 814, 129 So.2d 642 (1961).
In Lacoste, the State of Louisiana passed a statute levying a severance tax on the value of all furs and skins taken from wild animals within the state and directed that the tax be paid through the State Department of Conservation, which issued regulations requiring labeling of the furs as a means of enforcing the tax. Unlabeled furs were prohibited from being shipped. Lacoste protested the tax and asserted that the legislative authority was improperly delegated to the Department of Conservation.
The United States Supreme Court dismissed the claim as without merit, noting that the state had sovereign ownership of wild animals within its borders, and that the measure was a "police regulation, not a revenue act" passed to protect and conserve the fur-bearing animals and was not imposed in an arbitrary and unreasonable manner. As in the case sub judice, the regulation was based on biological data and was enacted for a specific problem area where the animal population was in danger.
We conclude, after reviewing the applicable statutes and considering the implication and inferences flowing therefrom, that the Commission has the authority, and, under certain situations, the duty, to promulgate rules and regulations concerning the taking of deer, where they do not conflict with existing statutes. To hold otherwise would make a shambles out of the Department of Wildlife Conservation.

III.
Did the lower court err in holding the regulations adopted by the Commission to be void because no finding of fact was made, and there was no substantial evidence to justify the same?
Although the Commission did not make a finding of fact, the record is replete with biological data and evidence to support the adoption of the regulation.
(1) The district biologist's deer herd data for northeast Mississippi, covering twelve of the counties involved, indicates via track count and browse survey the low population of deer, and a ten-year deer kill count attached to his report is an item which justifies the Commission's action in reducing pressure on deer in the area.
(2) Allowance of deer north of Highway 32 compared with deer south of Highway 32 as follows:
9. The deer population is much lower on the area North of Hwy 32.
Recent track counts were conducted on 5 miles of dirt roads on each area. The results were as follows:
North of Hwy 32  38 tracks/5 miles road.
South of Hwy 32  166 tracks/5 miles road.
Browse surveys were also conducted on each area featuring four preferred deer *1363 foods. Percentages show amount of plant parts that were browsed by deer. Twenty plot samples were taken at 5 chain intervals on each area. The results are as follows:

 North of South of
 Hwy 32 Hwy 32
Honeysuckle (Lonicera japonica) 4% 10%
Green Briar (Smilax sp.) 3% 11%
Trumpet Creeper (Campsis radicans) 2% 13%
Dog Wood (Cornus florida) 2% 8%

10. Many complaints have been made by hunters about deer population being too low on the area North of Hwy 32. The deer population North of 32 should increase to the same level as that South of Hwy 32 if the dog pressure is removed.
(3) A statistical breakdown of 1979-80 deer kill indicated justification for the regulation.
The biological data was uncontradicted in the record and evidenced a substantial basis for adoption of the regulation. In Mississippi State Tax Commission v. Miss.  Ala. State Fair, 222 So.2d 664 (Miss. 1969), the Court said:
We are therefore confronted with the question: Can the administrative agency, the Tax Commission, and a taxpayer, in a hearing before the Commission, do that which the Legislature has no power to do and has not done, that is to say, by an agreement confer jurisdiction upon the circuit court to retry, de novo, the issue of the assessment and collection of taxes required to be determined by the Tax Commission? The answer to that query is, of course, in the negative.
* * * * * *
In the instant case there is no "transcript of the testimony before said Commission," and since we may not consider the evidence given in a de novo hearing, the only record we have which has been properly appealed to this Court is the order of the Tax Commission denying the claim of the taxpayer to an exemption under the amusement tax assessment. The judgment of the Circuit Court on the de novo hearing must therefore be set aside and judgment entered here affirming the order of the Tax Commission. [222 So.2d at 666-667].
In County Board of Education v. Parents & Custodians of Students at Rienzi School Attendance Center, 251 Miss. 195, 168 So.2d 814 (1964), the Court held that there is a rebuttable presumption in favor of the action of an administrative agency and the burden of proof is upon those challenging its actions.[3]
The Commission adopted the regulation to prohibit use of dogs as a hunting aid in the areas involved here for the purpose of conserving and increasing the deer population in such areas. We conclude that the action of the Commission was not arbitrary, capricious, and discriminatory, and that it was supported by substantial evidence.
Wild game (and fish) probably have contributed more to the livelihood and development of mankind than any other natural resource. Without them, primitive man could not have existed. They supplied the American Indians with food, clothing and shelter. Pioneers depended upon game and fish for their sustenance and their economy was founded upon them.
During the early days of American history, wars evolved from disputes over hunting grounds and trapping territories. Also, they were the subject of treaties and settlements. Even today, controversies seethe and treaties are negotiated concerning fishing rights on the seas and hunting (seals and whales) rights in the Arctics and elsewhere. Fishing vessels from Russia, Japan and other countries ply the oceans of the world and even fish and hunt within sight of our own shores.
*1364 We once thought the oceans to be limitless with sea life, and now know that they can be exhausted by man. Bison once roamed the plains of America in thundering herds, but now are practically extinct. Forests, where game of all kinds was formerly found in abundance, now produce none. Many animals and a great deal of game are included in the endangered species.
In this situation, it is essential that the State protect, husband and propagate wildlife for the benefit of all its people. The arm of the State for effecting that purpose is the Department of Wildlife Conservation and the Commission on Wildlife Conservation. This Court aptly said in Ex Parte Fritz, 86 Miss. 210, 38 So. 722 (1905):
It is held with practical unanimity in all jurisdictions that animals ferae naturae are not the subject of private ownership until reduced to actual possession; that the ownership of such animals, so far as they are capable of ownership, is in the state, not as proprietor, but in its sovereign capacity, as the representative and for the benefit of all its people in common; and that the state may regulate and restrict the taking of such animals, or absolutely prohibit it, if deemed necessary for their preservation or for the public good. [86 Miss. at 218, 38 So. at 723].
Many men, including this writer, feel that a person who has never seen squirrels jump from limb to limb in the deep swamp on a frosty Fall morning; or has never heard a wild turkey gobble in April or seen him strut during mating season; or has never watched a deer bound through the woods and fields, or heard a pack of hounds run a fox, or tree a coon (raccoon); or has never hunted the rabbit, or flushed a covey of quail ahead of a pointed bird dog; or has never angled for bass or caught bream on a light line and rod, or taken catfish from a trotline and limb hook; has never lived.
Present generations owe posterity the obligation to protect and conserve wildlife, a valuable and essential natural resource, in order that future generations may have game and fish for their enjoyment, pleasure and benefit. The many sportsmen may not override rights of the few, nor may small groups impose their selfish wants against the will of the large. The main thread and principle in this case involve the authority of appellants to act for the accomplishment of those purposes.
The judgment of the lower court is reversed and judgment is rendered here for appellants.
REVERSED AND RENDERED.
PATTERSON, C.J., WALKER, P.J., and BROOM, BOWLING, HAWKINS, DAN M. LEE and PRATHER, JJ., concur.
SUGG, P.J., dissents.
SUGG, Presiding Justice, dissenting:
I concur with Part I of the majority opinion holding the question presented on this appeal is not moot. I dissent from the holding of the majority under Part II that the Commission had the authority to promulgate the regulation in question for two reasons. First, the regulation is contrary to the provisions of section 49-7-45 Mississippi Code Annotated (Supp. 1981), and second, the legislature may not delegate power to an administrative agency to define a crime.
At the outset, I recognize that the regulation of hunting and fishing involves highly emotional issues; however, legal principles must be determined on the basis of law and not emotions.

I
In my opinion, the regulation is in conflict with section 49-7-45 Mississippi Code Annotated (Supp. 1981) which follows:
It shall be unlawful for any person:
(a) Except in the defense of person or property or in eradicating disease among animals, to hunt or chase or to shoot at or kill or to pursue with the intent to take, kill or wound any wild animal or wild *1365 bird with firearms or devices of similar description or through the use of traps or by nets or snares or by the use of dogs except during the open season, in the number, by the means and in the manner herein specifically permitted, and then only after first having secured a license and a license tag to so hunt or trap, as the case may be. No person shall hunt, take, kill or wound any game animal (except rabbits, opossums, raccoons or deer) or game birds by any means, except by the aid of a dog, the use of decoys and/or with a gun not larger than 10 gauge and capable of being fired from the shoulder. Nor shall any person hunt, take, wound or shoot at any game bird from a power boat, sailboat or any boat propelled otherwise than by hand, nor except in waters of the gulf coast from any sinkbox or battery.
The second sentence has no application because it specifically excepts hunting of deer.
The first sentence of the statute prohibits hunting, chasing, shooting at, killing, or pursuing with the intent to take, kill or wound any wild animal or wild bird with
(a) firearms or devices of similar description, or
(b) through the use of traps, or
(c) by nets or snares, or,
(d) by the use of dogs,
except during the open season, in the number, by the means and in the manner herein specifically permitted, and then only after first having secured a license and a license tag to so hunt or trap, as the case may be.
To put the question in proper perspective, it is necessary to restate the sentence with application to hunting deer by dogs. If this is done the sentence would read as follows:
It shall be unlawful for any person ... to hunt any wild animal (this includes deer) ... by the use of dogs except during the open season ...
When broken down into its component parts the statute clearly permits hunting wild animals (this includes deer) with dogs during an open season.
For purpose of comparison, let us suppose that the Commission, instead prohibiting the hunting of deer by dogs, had prohibited the hunting of quail by dogs. Restating the sentence with application to hunting quail by dogs the statute would read as follows:
It shall be unlawful for any person ... to hunt any wild bird (this includes quail) ... by the use of dogs except during the open season... .
If a regulation has been adopted by the Commission prohibiting hunting quail with dogs, I do not think it would be seriously argued that the Commission had the authority to adopt such a regulation.
If the Commission can prohibit hunting deer by use of dogs in open season, then it could likewise prohibit hunting quail by the use of dogs during open season. Many other examples could be given, but the one given pertaining to hunting of quail by dogs is sufficient to demonstrate that the Commission simply exceeded its authority. It adopted a regulation contrary to what is permitted by statute.
Even though the Commission is given broad powers, it is not given the power to repeal a statute. The only statutory authority that the Commission has for prohibiting hunting by dogs is found in sections 49-7-31(e) and 49-7-32 Mississippi Code Annotated (Supp. 1981).
Under section 49-7-31(e) the Commission may fix the open season on opossums, raccoons, and bobcats with dogs and guns between October 1 and February 28 of the year following; however, such animals may be hunted with dogs throughout the year, but the Commission may close certain areas to dog hunting during the turkey season.
Section 49-7-32 authorizes the Commission to establish closed seasons on the running, hunting, chasing or pursuing with dogs of raccoon, fox or other wild animals or wild birds during turkey season in designated areas. Other statutes make it unlawful *1366 to hunt with guns or dogs on any sanctuary or preserve (49-5-5), to hunt with guns or dogs on Sunday, section 49-7-61 and to hunt with dogs during any special hunting seasons enumerated in 49-7-37(1)(2) and (3).
No other statute gives the Commission authority to prohibit hunting wild birds or animals with dogs during open season.
I am in sympathy with the purpose the Commission is trying to accomplish but do not believe that it has the authority to make a regulation in conflict with the statute.

II
The majority opinion also holds that the delegation of power to the Commission is constitutional and relies on Russell v. State, 220 So.2d 334 (Miss. 1969). It is true this case held that the legislature may delegate authority to the Commission to make rules and regulations pertaining to hunting and fishing. However, this case is in conflict with a later case, Howell v. State, 300 So.2d 774 (Miss. 1974), where we held that a portion of the Uniform Control Substances Act which granted the State Board of Health, an administrative agency, the authority to change controlled substances from one schedule to another, to add controlled substances to the schedules, and to delete controlled substances from the schedules was an unconstitutional delegation of power violative of Article I, section 1 and Article IV, section 33 of the Mississippi Constitution of 1890. We held that the power to define crimes is vested exclusively in the legislature and it may not delegate that power either expressly or by implication to an administrative agency.
Howell applies to this case because a violation of the regulation in question constitutes a violation of law thus giving an administrative agency the power to define crimes, a power that is vested exclusively in the legislature.
I therefore dissent for the reasons stated.
NOTES
[1] The question is presented and argued in the briefs.
[2] Russell v. State was not mentioned or overruled in Howell v. State, 300 So.2d 774 (Miss. 1974), which case dealt with a violation involving a controlled substance.
[3] In the future, the Commission and Department, in their respective areas, should make a complete record to support the regulations adopted and action taken, and should make a finding of fact as to each regulation in order to obviate questions raised, such as in this case, and to facilitate the work of the courts in disposing of such questions.