IN THE SUPREME COURT OF MISSISSIPPI
NO. 95-KA-00820-SCT

*STACY LEROY ROBINSON*

*v.*

*STATE OF MISSISSIPPI*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/10/95 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | NEWTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOHN M. COLETTE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | KEN TURNER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 8/14/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 9/5/97 |

**BEFORE PRATHER, P.J., BANKS AND SMITH, JJ.**

**SMITH, JUSTICE, FOR THE COURT:**

Stacy Leroy Robinson prays for relief from the judgment of the Newton County Circuit Court which found him guilty of possession of methamphetamines and possession of marijuana. Robinson alleges that the trial court erred (1) in finding that the inspectors of the Public Service Commission did not go outside their statutory authority to conduct a search of his truck and find drug paraphernalia; and (2) in not suppressing the drugs found in his possession under the Fruit of the Poisonous Tree Doctrine. This Court finds that (1) inspectors of the Mississippi Public Service Commission went beyond their statutory authority in searching for drugs without sufficient evidence thereof, and (2) the drugs found on the Robinson's person should have been suppressed as the fruit of the poisonous tree. Accordingly, we reverse and remand this case to the Newton County Circuit Court.

## FACTS

Stacy Leroy Robinson was randomly stopped by inspectors of the Mississippi Public Service

Commission while driving his eighteen wheeler on Interstate 20 through Newton County. The inspectors were to ostensibly perform a level two inspection of the driver and truck to insure compliance with all applicable state and federal laws. During the course of a level two inspection, which appears to be a basic safety inspection, the inspectors routinely check for such things as a valid commercial driver's license, an up-to-date and orderly truck's log, a fire extinguisher, does not have exhaust leaks into the cabin of the truck, and that the truck has a working speedometer, etc.

Inspector Parks checked Robinson's personal credentials while Inspector Morgan, a former agent of the Mississippi Bureau of Narcotics and the Meridian Police Department, checked the vehicle itself. Morgan testified that he asked Robinson for permission to search the vehicle. However, after reading Morgan's testimony regarding the consent to search, Morgan got nothing more than a consent to look in the vehicle, pursuant to his inspection. Morgan testified that he did not need Robinson's permission to look in the vehicle pursuant to a Level Two inspection, but asked because he was "just being nice." Further, although Morgan had consent to search forms with him, he never received Robinson's written consent to search the truck. After climbing into the cab of the truck, Morgan noticed several dozen plastic bags strewn about the front of the truck. He then suspected the presence of drugs. Morgan did not inspect the bags, but did send them to the crime lab as non-drug evidence. Morgan then went into the sleeper berth of the truck, which is just behind the front seats. His reason for going into that area is that he was searching for exhaust leaks into the cabin area. The inspector is able to detect exhaust leakage because black smoke will char onto the bottom of the mattress in the sleeper area. When Morgan lifted up the mattress, he saw a bank bag between the mattress and the front bunker head of the sleeper approximately four feet behind the driver's seat.

Morgan was unsure if the bag was open or closed, while Robinson testified unequivocally that the bag was closed. Morgan also stated that he opened the bag if it was closed, and that his purpose for touching the bag at all was that he was searching for drugs. Morgan stated that he searched the bag pursuant to the consent he received from Robinson prior to beginning his inspection. However, when asked on cross-examination about his reasoning for not getting a consent form signed prior to doing a search, Morgan stated that he only planned to look in the truck for safety violations. Morgan then admitted that he had only asked for, and ostensibly received, permission to look inside the truck pursuant to his safety inspection.

It was also Morgan's testimony that nothing was sticking out of the bag. However, he proceeded to look in the bag, at which time he found cooking utensils in the form of a butane lighter, glass test tubes with methamphetamine residue which were wrapped inside blue paper, a razor blade, and a cleaning brush. At that time, Morgan left the truck and placed Robinson under arrest for the possession of drug paraphernalia. Upon searching Robinson's person incident to arrest, the officers discovered a small amount of marijuana as well as some methamphetamine powder.

At the suppression hearing during the trial, the judge found that the search of the truck was an inspection, and that the discovery of the items (plastic bags) strewn about the vehicle led to the discovery of the money bag and the search of the money bag, resulting in the further frisk of the defendant, a pat down and retrieving further drugs. He, therefore, overruled the motion to suppress the drugs and paraphernalia. These were admitted into evidence, and Robinson was subsequently convicted of possession of marijuana and possession of methamphetamines.

Aggrieved, Robinson appeals.

ISSUES

I.

**WHETHER THE TRIAL COURT ERRED IN FAILING TO FIND THAT THE PUBLIC SERVICE COMMISSION INSPECTORS HAD EXCEEDED THE SCOPE OF THEIR AUTHORITY IN SEARCHING FOR DRUGS AND ARRESTING ROBINSON FOR DRUG VIOLATIONS.**

Robinson argues that the powers of inspectors of the Public Service Commission are limited by statute. As a result they are not empowered to make arrests for drug offenses or to conduct any type of drug inspections outside their limited powers. For its part, the State argues that Morgan acted within his authority because Mississippi statutory law empowers inspectors to arrest for violations of the rules of the Mississippi Public Service Commission. The State explains that Robinson violated the rules and regulations of the Public Service Commission when he drove the motor carrier while simultaneously possessing amphetamines.

The duties of the Public Service Commission are set out in Miss.Code Ann. §§ 77-7-13 through 16 (Supp. 1996). Miss.Code Ann. § 77-7-335 (Supp. 1996) deals with the authority of the enforcement officers of the Commission. Therein, it states that:

> (1) All inspectors on duty shall wear uniforms, shall have the right to bear arms, and shall have the right to make arrests and hold and impound any vehicle and the contents thereof which is being operated in violation of this chapter or the commission's rules, regulations, or general orders promulgated thereunder. . .

> (5) Nothing in this section shall be construed as granting the Mississippi Public Service Commission general police powers.

In *Strong v. Bostick*, 420 So. 2d 1356, 1361 (Miss. 1982), this Court held that administrative agencies have only such powers as are expressly granted to them or are necessarily implied, and any such power exercised must be found within the four corners of the statute by which the agency operates.

In *Presley v. State*, 229 So. 2d 830, 832 (Miss. 1969), this Court held that as the Legislature did not give general police power to agents of the Alcoholic Beverage Control division of the State Tax Commission, such agents did not have the authority to serve a search warrant for the purpose of making a search for illegal gambling equipment. However, in *Drane v. State*, 493 So. 2d 294, 298 (Miss. 1986), this Court held that agents of administrative agencies could conduct searches based upon probable cause. In that case, game wardens found marijuana in an automobile after they detected the odor during a routine stop to check for illegal game. That stop and search was made pursuant to Miss.Code Ann. § 49-1-3 (Supp. 1985) which enabled game wardens to search cars, boats, and other vehicles for illegal game where they had probable cause to believe that such existed without the benefit of a warrant. The Court held that the search for the marijuana was permissible because the officers detected the odor and thus had probable cause to search for marijuana based

upon the smell.

Thus, if this Court were to use the preceding cases as its yardstick in deciding this issue, it would appear that agents of administrative agencies can conduct searches based upon probable cause, as in *Drane, supra,* so long as they have authority to do so under their enabling statutes, as in *Strong v. Bostick*, *supra.* Thus, it would appear that *Presley* and *Drane* reached opposite conclusions, *Presley* holding that administrative agents have no authority outside that given to them by the Legislature, and *Drane* holding that administrative agents may search for items outside those listed in their enabling statutes upon a showing of probable cause.

Obviously, Robinson would prefer that this Court follow *Presley*. Under *Presley*, inspectors of the Public Service Commission would not be empowered to search for illegal contraband, but upon probable cause would have to call in a general law enforcement agency to verify probable cause, get a warrant, and conduct a search. All the while, the owner of the vehicle would be detained. Such a detention might be more of a burden to the innocent than the much shorter time that would be required should an inspector simply carry out a search for whatever he thinks that he has probable cause to find.

This leads us to the next question in this case: did Morgan have probable cause to believe that drugs could be found in the truck? In *McCray v. State*, 486 So. 2d 1247, 1250 (Miss. 1986) this Court held that in order to justify a search and seizure without a warrant, the State must show probable cause for arrest. Morgan's search was clearly predicated on his seeing the plastic bags. However, in *Hickman v. State ex rel. Dept. of Public Safety,* 592 So. 2d 44, 47 (Miss. 1991) in footnote 6, this Court stated:

> None of the four items-- tires, Crown Royal bag, plastic Ziploc bags or duct tape-- in and of itself proves much of anything. . . Law abiding citizens innocently use items like these everyday. It takes the combination of these items with much else to suggest by a preponderance of the evidence that [the defendants] were involved in illegal drug trafficking. We are not willing to bootstrap on to this general inference a finding that each of the items named is "paraphernalia."

Thus, plastic bags, like the ones seen by Morgan and used as the basis of a search for illegal drugs, are not *per se* drug paraphernalia or, standing alone, evidence of the presence of illegal drugs. Further, Morgan appears to have predicated his search upon the presence of the bags without even examining the bags for either the presence of drugs or of drug residue. If he examined the bags for such, he clearly did not find anything because he stated at the suppression hearing that he could not say that the bags contained illegal drugs. He also stated that there is nothing illegal about having plastic bags in a car. However, due to his training as an officer with the Mississippi Bureau of Narcotics and as a former police officer, the bags raised his suspicion and led him on a search for drugs. As a result, Morgan proceeded beyond the scope of the inspection that he was legally authorized to do or the "consent" to look in the truck in order to do his search. What Morgan should have done was get absolute consent from Robinson to search the truck, as evidenced by a written, signed consent form, because the presence of plastic bags does not equal probable cause for arrest as is required by *McCray*, *supra.* Unfortunately for Morgan, that is the point at which he began his search, and is also the point at which he exceeded the scope of his authority to inspect for drugs. Morgan's testimony on cross-examination is also compelling regarding this issue. He testified that he

only planned to look inside the truck for safety violations, and admitted that he only asked for and received permission from Morgan to look inside the truck pursuant to the safety inspection. We hold that Morgan lacked probable cause for the search.

## II.

### WHETHER OR NOT THE TRIAL COURT ERRED IN DENYING ROBINSON'S MOTION TO EXCLUDE EVIDENCE OBTAINED PURSUANT TO THE SEARCH.

Obviously, if Morgan conducted an illegal or unauthorized search without probable cause for arrest, then the fruits of that search should have been suppressed pursuant to the Fruit of the Poisonous Tree Doctrine. ***Wong Sun v. United States,*** 371 U.S. 471 (1963). The specific error alleged by Robinson is whether the contents of the bank bag, which led to Robinson's arrest and the subsequent finding of drugs on his person, should have been suppressed. The crux of the matter to be addressed is whether or not Morgan should have inspected, or most likely, opened the bank bag. Obviously the bank bag had nothing to do with his level two inspection. He also stated that if the bag was open when he entered the truck, a proposition which Robinson affirmatively denies, then there was nothing sticking out of it that would have drawn his attention. But he also stated that he specifically picked up the bag looking for drugs.

This case fits squarely within the precedent set by ***Ferrell v. State***, 649 So. 2d 831 (Miss. 1995), with only the exception being that in ***Ferrell***, the defendant had drugs in the car. In the case *sub judice*, Robinson had the drugs on his person. In ***Ferrell***, a police officer who had arrested a motorist for traffic violations went to the defendant's car to retrieve the keys. Noticing a matchbox on the seat, the officer opened the matchbox and found matches. Not satisfied, the officer opened a second matchbox and found nine rocks of crack cocaine. This Court reversed Ferrell's conviction because matchboxes are common objects in the everyday world, despite their use as carrying cases for crack cocaine. ***Id.*** at 834. We stated that because no incriminating evidence was in plain view, the officer had no authority to search for any. The import of ***Ferrell*** is that an officer may not search innocent looking objects in search of contraband, absent consent.

The Fourth Amendment to the United States Constitution protects individuals against unreasonable searches and seizures that intrude on reasonable expectations of privacy. ***United States v. Villareal***, 963 F.2d 770, 773 (5th Cir. 1992). ***Horton v. California***, 496 U.S. 128 (1990). Warrantless searches are presumptively unreasonable. ***Id.***; ***Villareal*** at 773. To object to a warrantless search, however, a defendant must manifest a subjective expectation of privacy within the object of the search, and the expectation must be one that society is willing to recognize as reasonable or legitimate. ***Villareal***, *supra*; ***California v. Ciraolo,*** 476 U.S. 207 (1986). Individuals may manifest legitimate expectations of privacy by placing items in closed, opaque containers that conceal their contents from plain view. ***Villareal***, *supra*; ***United States v. Ross***, 456 U.S. 798 (1982). Even if government agents have probable cause to believe that there is contraband in a container, they generally cannot search it unless they first obtain a warrant, or unless some exception to the warrant requirement, such as valid consent, applies. ***Villareal***, *supra.*

In the case *sub judice*, the State cannot use the argument that it had the right to search containers, specifically the bank bag, pursuant to a level two inspection where it had evidence of the presence of the drugs because (1) there is no evidence that Morgan ever inspected the plastic bags for drug

residue, and (2) at that point in time, upon seeing the plastic bags, Morgan, like the officer in *Ferrell,* had no more than suspicion. Mere suspicion does not rise to the level of probable cause. Finally, Morgan admitted that when he picked up the bag, he was searching for drugs. But according to his stated duty of conducting a level two inspection, he should only have been in the sleeper compartment to examine the sleeper area for exhaust leaks. Had any drugs or paraphernalia been in plain view, he would have had probable cause for arrest. But since such was not the case, Morgan actually had to search the bag itself, most likely opening it in the process. He went beyond the scope of any consent which had been given to him, and beyond the scope of a level two inspection.

Thus the search itself was illegal. As a result of the illegal search, the resulting search of Robinson's person incident to arrest was also tainted under the Fruit of the Poisonous Tree Doctrine. That Doctrine, also known as the exclusionary rule, prohibits introduction into evidence tangible or testimonial evidence that is derivative of the primary evidence, or that is otherwise acquired as a result of the unlawful search. *Marshall v. State*, 584 So. 2d 437, 438 (Miss. 1991); *Murray v. United States*, 487 U.S. 533, 536 (1988). As a result, the drugs found on Robinson's person, as well as the drug paraphernalia and residue found in the bank bag should have been suppressed. Accordingly, this case is reversed and remanded.

## CONCLUSION

Stacy Robinson's conviction is reversed and remanded to the Newton County Circuit Court. We find that the agents of the Public Service Commission went beyond their given authority in elevating a safety inspection into a search for drugs when no contraband was in plain view, and that there existed no probable cause to make an arrest for drugs at the time of the search. Further, we reverse the trial court's decision not to suppress evidence found in the bank bag or on Robinson's person on the grounds that this evidence was excludable under the Fruit of the Poisonous Tree Doctrine.

**REVERSED AND REMANDED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, McRAE, ROBERTS AND MILLS, JJ., CONCUR.**