# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-CA-00100-SCT

*IN RE: VALIDATION OF TAX ANTICIPATION*
*NOTE, SERIES 2014, BY HUMPHREYS COUNTY,*
*MISSISSIPPI, IN THE MAXIMUM PRINCIPAL*
*AMOUNT OF ONE MILLION TWO HUNDRED*
*THOUSAND DOLLARS: GLENN RUSSELL*

*v.*

*HUMPHREYS COUNTY BOARD OF*
*SUPERVISORS*


| | |
|---|---|
| DATE OF JUDGMENT: | 12/16/2014 |
| TRIAL JUDGE: | HON. JANE R. WEATHERSBY |
| TRIAL COURT ATTORNEYS: | WILLIE L. BAILEY |
| | GLENN RUSSELL, PRO SE |
| COURT FROM WHICH APPEALED: | HUMPHREYS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | SAMUEL L. BEGLEY |
| ATTORNEY FOR APPELLEE: | WILLIE L. BAILEY |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED - 03/31/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1.     When the Humphreys County Board of Supervisors notified the public of its intention

to issue a $1.2 million tax anticipation note, taxpayers filed a petition containing signatures

of qualified electors requesting that the matter be submitted to the public for an election. The

Board determined that the number of qualified electors who had signed the petition was

insufficient to require an election. The Board, therefore, authorized the note's issuance. The

matter then was submitted to the Humphreys County Chancery Court for validation. The day before the hearing, Glenn Russell filed a written objection. At the hearing, Russell appeared *pro se* to oppose validation. Nevertheless, the chancellor entered a judgment validating the tax anticipation note. Aggrieved, Russell appealed. For the reasons stated below, we reverse and remand for proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

¶2.     On September 2, 2014, the Board of Supervisors of Humphreys County, Mississippi (the Board), adopted a resolution declaring its intention to issue a tax anticipation note in the amount of $1.2 million "to raise money for the purpose of defraying the expenses of said County in anticipation of ad valorem taxes." Pursuant to Mississippi Code Section 19-9-27 (Rev. 2012),[1] the Board declared its intention to borrow from the "ad valorem tax receipts

[1] Mississippi Code Section 19-9-27 provides, in pertinent part, the following:

The board of supervisors of any county may borrow money in anticipation of taxes for the purpose of defraying the expenses of such county, and may issue negotiable notes of the county therefor . . . . The amount of money herein authorized to be borrowed shall not be in excess of twenty-five percent (25%) of the estimated amount of taxes collected and to be collected under the last preceding annual tax levies for the particular fund for which said money is borrowed. The board of supervisors may borrow said money, as hereinbefore provided, from any available fund in the county treasury, or from any other source, and such loan shall be repaid in the manner herein provided. . . . Money may be borrowed in anticipation of ad valorem taxes under the provisions of this section, regardless of whether or not such borrowing shall create an indebtedness in excess of statutory limitations. . . .

. . . The notes herein authorized shall not be issued until the board of supervisors shall have published notice of its intention to issue same; said notice to be published once each week for three (3) weeks in some newspaper having a general circulation in such county, but not less than twenty-one (21) days, nor more than sixty (60) days, intervening between the time of the first

2

of the County for the fiscal year ending September 30, 2015," which it "expected to be Six Million One Hundred Seventy-Five Thousand Dollars ($6,175,000) for the General Fund." In accordance with the statute, the resolution provided that the Board was to meet for the purpose of directing the issuance of the $1.2 million note "at 10:00 o'clock a.m. on October 6, 2014." The resolution provided the following:

> If twenty percent (20%), or fifteen hundred (1,500), whichever is less, of the qualified electors of the County shall file with the Clerk of the Board a written protest petition against the issuance of the Notes on or before the aforesaid date and hour, then the Notes shall not be issued unless authorized at an election on the question of the issuance of the Notes to be called and held as provided by law.

The resolution directed that notice "shall be published once a week for three (3) consecutive weeks in *The Belzoni Banner*, a newspaper published in and having a general circulation in the County . . . ." The Board effected publication of its notice on September 10, 2014; September 17, 2014; and September 24, 2014, respectively.

¶3. In response to the publication of September 10, 2014, an "Urgent Notice To Concerned Voters of Humphreys County" circulated "to help stop future tax increases." This "Urgent Notice" indicated that a prior issue of *The Belzoni Banner*, published on August 13, 2014, had likewise provided notice to the County of the Board's intention to borrow $1.2

> notice and the meeting at which said board proposes to issue such notes. If, within the time of giving notice, twenty percent (20%), of [sic] fifteen hundred (1500), whichever is less, of the qualified electors of the county shall protest or file a petition against the issuance of such notes, then such notes shall not be issued unless authorized by a three-fifths (3/5) majority of the qualified electors of such county, voting at an election to be called and held for that purpose.

Miss. Code Ann. § 19-9-27 (Rev. 2012).

million pursuant to Section 19-9-27. However, in the prior issue of *The Belzoni Banner*, the County had reported that the estimated *ad valorem* tax revenue for the preceding year had been only $3,482,000. The notice dated September 10, 2014, and subsequent notices published by the County in *The Belzoni Banner*, declared that the preceding annual tax levies had been $6,175,000. According to the "Urgent Notice," when the Board "figured out that 25% of $3,482,000 was only $870,500, they pulled the ad." The "Urgent Notice" urged recipients to "stop the insane behavior" of the Board by signing a petition because "if 1500 or 20% of the electors, whichever is less, of the county petition against the borrowing of funds, the Board of Supervisors would have to let the people vote on it."

¶4. A petition protesting the tax anticipation note was filed on October 6, 2014. That same day, the Board recessed the October 6, 2014, meeting until October 13, 2014. On October 13, 2014, the Board considered the petition and granted a continuance pending the Circuit Clerk's completion of the petition's verification. On October 16, 2014, the Board accepted the Circuit Clerk's certification to the effect that "1579 qualified electors of Humphreys County" had signed the petition. Two-hundred and nineteen electors had "signed a statement withdrawing their name from the Petition." The Circuit Clerk therefore certified that 1,360 names remained.

¶5. On October 16, 2014, the Board issued a resolution authorizing and directing the issuance of the tax anticipation note in the amount of $1.2 million. The Board determined that "[t]here are Seven Thousand and Seventeen (7,017) qualified electors of the County and twenty percent (20%) of Seven Thousand and Seventeen (7,017) is One Thousand Four

Hundred and Three (1,403)." The Board found that "[t]he smaller of twenty percent (20%) of the qualified electors (which is 1,403) and One Thousand Five Hundred (1,500) is One Thousand Four Hundred and Three (1,403)." The Board found that 219 signatures had been removed and that "the remaining number of petitioning qualified electors is One Thousand Three Hundred Sixty (1,360)." Therefore, the Board found that the number of signatures of qualified electors was "insufficient to require an election on the question of the issuance of the proposed bonds . . . ." Pursuant to Mississippi Code Section 31-13-5 (Rev. 2010),[2] the

---

[2] Mississippi Code Section 31-13-5 provides, in pertinent part, the following:

When any county . . . shall take steps to issue bonds for any purpose whatever, the officer or officers of such county . . . charged by law with the custody of the records of same shall, if the board issuing same so determine by order entered on its minutes, transmit to said bond attorney a certified copy of all legal papers pertaining to the issuance of said bonds, including transcripts of records and ordinances, proof of publication, and tabulation of vote, if any, and any other facts pertaining to said issuance. Said bond attorney shall thereupon as expeditiously as possible examine said legal papers, pass upon the sufficiency thereof, and render an opinion in writing, addressed to the board proposing to issue said bonds, as to the validity of same; and if any further action on the part of said board is necessary or any further data is desired, he shall indicate what is necessary to be done in the premises in order to make said bonds legal, valid, and binding. When in his opinion all necessary legal steps have been taken to make the said bond issue legal, valid, and binding, he shall render a written opinion to that effect and shall transmit all legal papers, together with his opinion, to the clerk of the chancery court of the county in which the district or municipality proposing to issue said bonds is situated, or if said district embraces more than one (1) county or parts of more than one county, then to the chancery clerk of any one of said counties. The chancery clerk shall file the same, enter the same on the docket of the chancery court, and shall promptly notify the chancellor of the district in writing that said papers are on file and the cause has been docketed. The chancellor shall then notify the chancery clerk to set the matter for hearing at some future date, not less than ten (10) days thereafter, and the clerk shall give not less than five (5) days' notice by making at least one (1) publication in some paper published in the county where the case is docketed, addressed to

Board directed its clerk "to make up a transcript of all legal papers and proceedings relating to the Note and to certify and forward the same to the State Bond Attorney for the institution of validation proceedings."

¶6. State Bond Attorney Spence Flatgard, having examined the papers submitted by the Board, stated in his written opinion dated November 14, 2014, that: "Based upon my review of the legal papers provided to me, I have reached the opinion that the above described obligation is regular, legal and valid as to form, principal amount, denomination, interest rate, maturities, and otherwise, and the Note does not exceed any limitations imposed by law."

¶7. The tax anticipation note validation hearing occurred in the chancery court on December 16, 2014. Glenn Russell appeared, *pro se*, to object to validation, having filed a written objection on December 15, 2014. The Board first presented Flatgard, who testified that "all the procedures have been followed strictly according to the statute" and that "this note is [a] . . . valid obligation of the County." The Board next called Thomas L. Goodwin, a part-time county administrator responsible for overseeing county finances, formulating a budget, and setting the tax levy. He testified that he was "afraid that the people that work for the County will have to take furlough if we do not receive this money." He also said that

---

the taxpayers of the county, municipality, or district proposing to issue said bonds, advising that the matter will be heard on the day named. If on the day set for hearing there is no written objection filed by any taxpayer to the issuance of said bonds, a decree approving the validity of same shall be entered by the chancellor; and if the chancellor be not present the clerk shall forward him the decree prepared by the state's bond attorney for his signature, and shall enter the said decree upon his minutes in vacation.

. . . .

Miss. Code Ann. § 31-13-5 (Rev. 2010).

there are "a lot of services that are given that are monthly paid expenses," including ambulance services and garbage collecting. He testified that, without the money, "[i]f we don't have to shut down, there'll be severe cutbacks."

¶8.     Russell called to the witness stand Cleotra Tanner, who testified that it was her personal opinion as a citizen of Humphreys County that the Board had not utilized the correct numbers in arriving at the amount of its requested $1.2 million tax anticipation note. Earl Lee Stephens then testified that it was his opinion that withdrawing the bond would be in the best interest of the county. Kathy Russell testified that it was her opinion that the Board legally could borrow only in the "ballpark" of $870,000, because the County's general fund was $3,482,000. When Russell attempted to ask witnesses about the sufficiency of signatures on the petition, the trial court sustained the county's objections, ruling at one point that "[t]hat time has gone by for that" and that "[w]e're just here on the validation of the bond issue today."

¶9.     At the hearing, the trial court validated, *ore tenus*, the tax anticipation note. In its written validation judgment, the trial court ruled:

> That the said obligation is regular, legal and valid as to form, principal amount, denomination, interest rate, maturities and otherwise; and that said obligation does not exceed any limitations imposed by law; that no litigation is pending affecting the issuance or validity of the above described obligations; and that the same should now be validated.

Aggrieved, Russell appealed on January 5, 2015. He argued first that the $1.2 million tax anticipation note obtained by the Board exceeded the twenty-five percent borrowing cap imposed by Mississippi Code Section 19-9-27. Second, he argued that the Chancery Court

of Humphreys County had erred by refusing to consider testimony regarding the sufficiency of signatures of qualified electors on the petition protesting the tax anticipation note. The Board maintained that the validation proceedings had been legal and that full repayment and satisfaction by the Board of the tax anticipation note had rendered Russell's claims moot.

¶10. On August 13, 2015, the Board filed a Motion for Leave to File Supplemental Record, seeking to supplement the record with the "Affidavit of Lawrence D. Browder, Chancery Clerk of Humphreys County, Mississippi," for the purpose of bringing to this Court's attention the following: (1) "the issuance of the Tax Anticipation Note on December 23, 2014," and (2) "the repayment of said note on April 6, 2015." Justice Lamar, on August 25, 2015, ordered that the motion be passed for consideration alongside its consideration of the merits of the case.

¶11. In our consideration of the case, we address the following questions:

I.      Whether to grant or deny the Board's Motion for Leave to File Supplemental Record.

II.     Whether the doctrine of mootness applies to Russell's arguments on appeal, in light of the Board's claim that it has satisfied the tax anticipation note.

III.    Whether the $1.2 million tax anticipation note obtained by the Board exceeded the twenty-five percent borrowing cap imposed by Mississippi Code Section 19-9-27.

IV.     Whether the Chancery Court of Humphreys County erred by refusing to consider testimony regarding the sufficiency of signatures of qualified electors on the petition protesting the tax anticipation note.

Each question is addressed in turn.

## DISCUSSION

### I.   Whether to grant or deny the Board's Motion for Leave to File Supplemental Record.

¶12. The Board seeks to supplement the record with three documents supporting its contentions that the tax anticipation note was issued on December 23, 2014, and that the note was repaid on April 6, 2015. The first is an affidavit of Lawrence D. Browder, Chancery Clerk of Humphreys County, stating that "on April 6, 2015, Humphreys County [] paid to the Bank the sum of $1,205,749.33 as full satisfaction of the note issued." The second document with which the Board seeks to supplement the record is the chancery court's validation judgment of December 16, 2014, which already appears in the record. The third document is an unsigned copy of the tax anticipation note, apparently obtained from Trustmark National Bank, dated December 23, 2014. Russell opposes the motion, arguing that the Board "improperly seeks to include in the record matters that have taken place after the validation judgment for the tax anticipation note at issue in this appeal was entered by the chancery court."

¶13. Generally, "Mississippi appellate courts will not consider information that is outside the record." *Peden v. City of Gautier*, 870 So. 2d 1185, 1188 (Miss. 2004) (quoting *Hardy v. Brock*, 826 So. 2d 71, 76 (Miss. 2002)). Mississippi Rule of Appellate Procedure 10(e), however, provides a mechanism by which the appellate record may be supplemented:

> If anything material to either party is omitted from the record by error or accident or is misstated in the record, the parties by stipulation, or the trial court, either before or after the record is transmitted to the Supreme Court or the Court of Appeals, or either appellate court on proper motion or of its own initiative, may order that the omission or misstatement be corrected, and, if

necessary, that a supplemental record be filed. . . . Any document submitted to either appellate court for inclusion in the record must be certified by the clerk of the trial court. All other questions as to the form or content of the record shall be presented to the appropriate appellate court.

M.R.A.P. 10(e). This Court has held that Rule 10(e) "is not a vehicle for admitting new evidence into the record, a role generally reserved for the trial court; rather Rule 10(e) is a method for correcting the appellate record to reflect what occurred in the trial court." *Corrothers v. State*, 148 So. 3d 278, 315 (Miss. 2014) (citing M.R.A.P. 10(e)).

¶14. Although the Board provides no citation in support of its motion to supplement, Rule 10(e) governs. Rule 10(e), however, contemplates omission from the appellate record by error, accident, or misstatement. In the present case, the validation judgment was entered on December 16, 2014, and the record was designated on January 5, 2015. According to the affidavit with which the Board seeks to supplement the record, dated August 13, 2015, the note was repaid on April 6, 2015. The record was filed on May 8, 2015. The "relevant occurrences" the Board claims to be "relevant to the disposition" of the present case took place after the appellate record had been designated, though prior to the record's having been filed. The note and the fact of repayment were omitted from the trial court record because neither had occurred at the time the trial court ruled. Rule 10(e) is not a proper method by which these documents may be presented to this Court, and our rules provide no other mechanism that is applicable.

¶15. We therefore deny the Board's Motion for Leave to File Supplemental Record.

**II. Whether the doctrine of mootness applies to Russell's arguments on appeal, in light of the Board's claim that it has satisfied the tax anticipation note.**

10

¶16. The Board argues that "[a]ll issues in this case became moot when the Appellee repaid the Tax Anticipation Note in full on April 6, 2015." It prays that this Court dismiss the appeal. The Board relies on the documents with which it sought to supplement the appellate record and which this Court passed for consideration with the merits of the case. In light of our denial of the Board's Motion for Leave to File Supplemental Record, and in the absence of documentation that the note has, in fact, been repaid by the County, we find the Board's claim of mootness to be without merit. But we find that, even if this Court had permitted the sought supplementation , the present appeal is not moot merely by virtue of the Board's having fully satisfied the tax anticipation note.

¶17. "A case is moot if 'a judgment on the merits . . . would be of no practical benefit to the plaintiff or detriment to the defendant.'" ***In re City of Biloxi***, 113 So. 3d 565, 572 (Miss. 2013) (quoting ***Gartrell v. Gartrell***, 936 So. 2d 915, 916 (Miss. 2006)). "We repeatedly have held that '[c]ases in which an actual controversy existed at trial but the controversy has expired at the time of review, become moot.'" ***In re City of Biloxi***, 113 So. 3d at 572. As such, "standing must exist when litigation is commenced and must continue through all subsequent stages of litigation, or the case will become moot." ***Id.*** "Cases that have become moot will be dismissed, because the Court does not adjudicate moot questions." ***Id.*** (citing ***City of Madison v. Bryan***, 763 So. 2d 162, 166 (Miss. 2000)). "'We have held that the review procedure should not be allowed for the purpose of settling abstract or academic questions, and that we have no power to issue advisory opinions.'" ***Fails v. Jefferson Davis***

***Cty. Pub. Sch. Bd.***, 95 So. 3d 1223, 1225 (Miss. 2012) (quoting ***Allred v. Webb***, 641 So. 2d 1218, 1220 (Miss. 1994)).

¶18.    However, "the doctrine which prevents adjudication of moot cases provides an exception for those cases which are capable of repetition yet evading review." ***Miss. High Sch. Activities Ass'n, Inc. v. Coleman***, 631 So. 2d 768, 772 (Miss. 1994) (citing ***Strong v. Bostick***, 420 So. 2d 1356, 1359 (Miss. 1982)). The "capable of repetition yet evading review" exception is limited to situations in which "(1) the action complained of is too short in duration to be fully litigated before its expiration and '(2) [t]here [is] a reasonable expectation that the same complaining party [will] be subject to the same action again.'" ***Coleman***, 631 So. 2d at 772 (quoting ***Strong***, 420 So. 2d at 1359). With regard to the first prong, this Court has held that "two separate prerequisites [must] be met before the exception may be applied, to wit: (1) the duration of the challenged action must have been short and (2) the time required to complete an appeal is lengthy." ***Coleman***, 631 So. 2d at 773 (citing ***M.A.C. v. Harrison Cty. Family Court***, 566 So. 2d 472, 474 (Miss. 1990)).

¶19.    In ***Coleman***, a St. Joseph's High School student was deemed ineligible to participate in sports in the first year of his attendance at the school by virtue of the Mississippi High School Athletic Association's antirecruiting rule, which "requires that a participant in interscholastic activities attend a school in the school district of which his parents or guardian are bona fide residents." ***Coleman***, 631 So. 2d at 772. The student's mother sued, arguing that "her son would suffer immediate and irreparable injury or loss" and that "the Association's eligibility rules regarding residence had no rational basis for parochial school

students." *Id.* The chancellor issued a temporary restraining order and, after an evidentiary hearing, a preliminary injunction, which required that the Association allow the student to play. *Id.*

¶20.    This Court held that the "capable of repetition yet evading review" exception to the mootness doctrine applied, because "to hold this case moot would, in effect, prohibit the Association from enforcing its one year ineligibility rule, when the student is granted relief in the chancery court, because of the length of time required to appeal such case." *Id.* at 773. The Court found that "[t]he matter could, conceivably, never be resolved if dismissed as moot each time." *Id.*

¶21.    In the present case, "the action complained of," the validation of tax anticipation notes in amounts which allegedly do not comport with the requirements of Mississippi Code Section 19-9-27, "is too short in duration to be fully litigated before its expiration." *Coleman*, 631 So. 2d at 772.  Here, the notice of appeal and record designation were filed on January 5, 2015. The tax anticipation note allegedly was paid off in full on April 6, 2015. If the mootness doctrine were found to apply, the question of whether the Board was complying with Section 19-9-27 could not be litigated fully in advance of the Board's having paid off the note. As in *Coleman*, "[t]he matter could, conceivably, never be resolved if dismissed as moot each time." *Id.* at 773. Moreover, should the Board seek to validate a tax anticipation note in the future, a reasonable expectation exists that the Board could be subjected to the same kind of litigation by Russell and/or others. *Id.* at 772.

13

¶22. Further, this Court has crafted a public-interest exception to the mootness doctrine: "the rule will not be applied when the question or questions involved are matters affecting the public interest." *Sartin v. Barlow*, 196 Miss. 159, 16 So. 2d 372, 376 (Miss. 1944). "[T]here is an exception to the general rule as respects moot cases, when the question concerns a matter of such nature that it would be distinctly detrimental to the public interest that there should be a failure by the dismissal to declare and enforce a rule for future conduct." *Id.*

¶23. In *Sartin*, the Circuit Clerk of Walthall County refused to allow a Walthall County Board of Supervisors candidate an opportunity to examine the contents of ballot boxes. *Id.* at 374. The candidate, represented by the local district attorney, sought a petition for writ of mandamus in the Circuit Court of Walthall County "against the said clerk to compel him to perform and to permit to be performed what the law so clearly required of said clerk . . . ." *Id.* Ultimately, this Court affirmed the judgment of the trial court, ordering "the respondent clerk to permit the examination . . . ." *Id.* at 377. The election having occurred at the time the appeal was heard, the Court raised the question of "whether the cause has become moot . . . ." *Id.* at 376. The Court found that the public-interest exception "is of a compelling propriety in the present instance," because "if we were to dismiss this appeal without disposing of the legal questions here involved and without declaring the rule of law which must be observed, and doing nothing for its enforcement, the way would thereby be made plain to corrupt politics . . . ." *Id.* at 377.

14

¶24. In a similar case, this Court opined: "since this appeal has been filed this case has become moot as to the litigating parties," because, since the filing of the appeal, the general election had been held and a new supervisor had been elected. *Misso v. Oliver*, 666 So. 2d 1366, 1369 (Miss. 1996). Nevertheless, the Court stated that, "[b]ecause this case will control future elections and the need for resolution reflects a continuing controversy in the election area and this appeal is one of public interest this Court will entertain this appeal." *Id.*

¶25. In *Strong v. Bostick*, this Court considered a Mississippi Commission on Wildlife Conservation regulation "which established the 1981-82 'Deer Gun Seasons,'" precluding "the use of dogs as an aid for hunting deer in certain areas of the state, particularly in north Mississippi." *Strong*, 420 So. 2d at 1357. The regulation was challenged in the circuit court, which ruled that the regulation was void and should be rescinded. *Id.* On appeal, the question was raised whether the issue was "moot because the period during which hunting deer with dogs was prohibited has expired." *Id.* at 1358. This Court soundly rejected the argument on the grounds that the controversy was capable of repetition yet evading review but noted that "the questions involved in this case are of great public interest . . . ." *Id.* According to the Court, "the parties and the public are entitled to know whether or not the [Mississippi] Department [of Wildlife Conservation] and the Commission have the authority to promulgate and enforce regulations . . . ." *Id.* And "[i]f this Court did not address the questions on the ground of being moot, the matter would never be resolved." *Id.* at 1359.

¶26. In the present case, the question of whether the Board complied with Section 19-9-27 in obtaining tax anticipation notes in the correct statutory amount is a matter of public

interest. Were this Court to dismiss this appeal as moot, the public interest could be thwarted if the Board later did not adhere to the statute. As in **_Strong_**, the public is entitled to a decision from this Court regarding whether the statutory provisions through which the Board obtains tax anticipation notes are being followed correctly. As such, assuming the Board has satisfied the tax anticipation note in full, the present appeal is not moot.

**III.    Whether the $1.2 million tax anticipation note obtained by the Board exceeded the twenty-five percent borrowing cap imposed by Mississippi Code Section 19-9-27.**

¶27.    Mississippi Code Section 19-9-27 permits the county board of supervisors to:

> . . . borrow money in anticipation of taxes for the purpose of defraying the expenses of such county, and may issue negotiable notes of the county therefor . . . . The amount of money herein authorized to be borrowed shall not be in excess of twenty-five percent (25%) of the estimated amount of taxes collected and to be collected under the last preceding annual tax levies for the particular fund for which said money is borrowed. The board of supervisors may borrow said money, as hereinbefore provided, from any available fund in the county treasury, or from any other source, and such loan shall be repaid in the manner herein provided. . . . Money may be borrowed in anticipation of ad valorem taxes under the provisions of this section, regardless of whether or not such borrowing shall create an indebtedness in excess of statutory limitations.

Miss. Code Ann. § 19-9-27 (Rev. 2012). Russell contends that the Board was not borrowing from a "particular fund for which said money is borrowed," which he argues the statute requires, but rather that the Board was borrowing against "[t]he estimated aggregate of all ad valorem tax levies for 2014-2015," which he conceded was "$6,175,000."

¶28.    At the outset, we observe that Russell asks this Court to take judicial notice of Exhibits A and B, attached to his brief, which he claims to be "budget related documents of the County." Judicial notice is governed by Mississippi Rule of Evidence 201(b), which

16

provides that "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." M.R.E. 201(b). In **Ditto v. Hinds County**, this Court held that minutes of a board of supervisors meeting were properly noticed judicially "as they were easily ascertainable through certified public records." **Ditto v. Hinds Cty.**, 665 So. 2d 878, 880-81 (Miss. 1995).

¶29. Exhibit A, a certified copy of the minutes of the Humphreys County Board of Supervisors from its meeting on September 12, 2013, in which it adopted the levying of county *ad valorem* taxes for the 2013-2014 fiscal year and ordered published the 2013-2014 budget in *The Belzoni Banner*, may be judicially noticed by this Court because it is a copy of a certified public record. The minutes, themselves, appear in the record. Attached to the minutes is a certified copy of the 2013-14 county budget. Exhibit B is a copy of a *The Belzoni Banner* publication of the Humphreys County budget adopted for fiscal year 2014-2015, which shows that $4,061,700 was the "[a]mount necessary to be raised by tax levy" in the General Fund. Exhibit B, though not a certified record and though a mere copy of an undated edition of *The Belzoni Banner*, is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned" under Mississippi Rule of Evidence 201. The Board published the 2014-2015 budget in the same manner it had published the 2013-2014 budget in *The Belzoni Banner*. It is clear that the publication was adopted by the Board, and its accuracy is "easily ascertainable through certified public

records." ***Ditto***, 665 So. 2d at 881. The tax anticipation note was authorized in October 2014, and the validation took place in December 2014. The 2014-2015 budget would, therefore, have been the last preceding annual tax levy. *See* Miss. Code Ann. § 19-9-27 (Rev. 2012).

¶30.    Section 19-9-27 limits the amount that can be borrowed by the Board to twenty-five percent "of the estimated amount of taxes collected and to be collected under last preceding annual tax levies for the *particular fund* for which said money is borrowed." Miss. Code Ann. § 19-9-27 (Rev. 2012) (emphasis added). According to Russell, the statute requires "the amount to be borrowed to be tied to a 'particular' fund, and likewise tied to ad valorem taxes that support that particular fund."

¶31.    But first, the statute does not require that boards of supervisors borrow only from estimated *ad valorem* taxes. In fact, the statute provides that "[t]he board of supervisors may borrow said money, as hereinbefore provided, from *any available fund* in the county treasury, or from any other source, and such loan shall be repaid in the manner herein provided." Miss. Code Ann. § 19-9-27 (Rev. 2012) (emphasis added).

¶32.    The second argument seems to be that the statute requires the board of supervisors to select a "particular fund" from which the money is to be borrowed. Russell further writes that "the stated purpose of the tax anticipation note was to borrow money to help provide cash flow for the **General Fund**." (Emphasis in original.) According to Russell, the county budget for 2014-2015 "shows that only $4,061,700 would be generated by the ad valorem tax levy to support the General Fund. Under those circumstances, the borrowing limit based on the

18

sum of $4,061,700 is only $1,105,425,[3] a sum that is $184,575 less than the $1.2 million amount for the tax anticipation note."

¶33. Here, the Board declared its intention to borrow from the "ad valorem tax receipts of the County for the fiscal year ending September 30, 2015," which it "expected to be Six Million One Hundred Seventy-Five Thousand Dollars ($6,175,000) *for the General Fund*." (Emphasis added.) So it does seem that, based on the 2014-2015 county budget, the maximum "[a]mount necessary to be raised by tax levy" for the General Fund as shown on the county's 2014-2015 budget was twenty-five percent of $4,061,700, or $1,015,425.

¶34. But Thomas L. Goodwin, part-time county administrator responsible for overseeing the Board's finances, formulating the county budget based on instructions from the Board, and setting the tax levy accordingly, suggested that the General Fund indicated on the county's published budget and the general county operating fund were different:

> The general fund of this County is a general operating fund which has bonded debt, which has road and bridge, which has a general fund in it, but also we have other general expenses. We have fire fund in it. We have lots of funds in this, Your Honor, that go into the general fund of the County. The general fund of the County is a general operating fund which is the total County.

He testified that, in 2013, "the general operating fund of this County ha[d] a total tax—total levy which are the taxes of $6,038,032," and that amount was "[a] total." The 2014-2015 budget indicates that the total levy was $6,204,344.

¶35. While the statutory language does limit boards of supervisors to borrowing twenty-five percent "of the estimated amount of taxes collected and to be collected under the last

---

[3] Russell ostensibly means $1,015, 425, which is 25% of $4,061,700. This number also is $184,575 less than $1,200,000, as Russell avers.

preceding annual tax levies for *the particular fund for which said money is borrowed*," the statute permits boards of supervisors to borrow money "from any available fund in the county treasury, or from any other source." Miss. Code Ann. § 19-9-27 (Rev. 2012). This is sufficiently broad to allow counties to borrow against total anticipated *ad valorem* tax revenues from the preceding annual tax levy.

¶36.   Russell argues finally that Section 19-9-27 should be read *in pari materia* with Sections 27-39-303 and 27-39-317. Mississippi Code Section 27-39-303 provides, in pertinent part, that "[t]he board of supervisors of any county [may] levy ad valorem taxes on taxable property in the respective counties in any one (1) year . . . for all general county purposes . . . ." Miss. Code Ann. § 27-39-303 (Rev. 2010). Mississippi Code Section 27-39-317 requires that, "[i]n making the levy of taxes, the board of supervisors shall specify, in its order, the levy for each purpose . . . ." Miss. Code Ann. § 27-39-317 (Supp. 2015). Russell's arguments, however, are unavailing in light of Goodwin's testimony that the numbers utilized by the Board were based on the total *ad valorem* revenues in the general operating fund from the preceding annual tax levies. Section 19-9-27 permits the Board to borrow money "from any available fund in the county treasury, or from any other source." Miss. Code Ann. § 19-9-27 (Rev. 2012).

¶37.   We find no merit in Russell's arguments and hold that the Humphreys County Board of Supervisors did not exceed statutory limits in obtaining the tax anticipation note.

**IV.   Whether the Chancery Court of Humphreys County erred by refusing to consider testimony regarding the sufficiency of signatures of qualified electors on the petition protesting the tax anticipation note.**

20

¶38.	Russell contends that the chancellor, at the validation hearing, declined to allow him to present evidence to contest the sufficiency of signatures of qualified electors who had signed a petition protesting the tax anticipation note. According to Russell:

> Clearly, it would be a waste of judicial resources to require an objector such as the Appellant to seek an appeal on the petition signature issue, which would in all likelihood have been done through a bill of exceptions under Miss. Code Ann. § 11-51-75 filed in the circuit court, while also separately and contemporaneously objecting to the validity of the tax exemption note in the chancery court validation proceedings.

Section 19-9-27 provides the following:

> If, within the time of giving notice, twenty percent (20%), o[r] fifteen hundred (1500), whichever is less, of the qualified electors of the county shall protest or file a petition against the issuance of such notes, then such notes shall not be issued unless authorized by a three fifths (3/5) majority of the qualified electors of such county, voting at an election to be called and held for that purpose.

Miss. Code Ann. § 19-9-27 (Rev. 2012).

¶39.	Here, the Board determined that "[t]here are Seven Thousand and Seventeen (7,017) qualified electors of the County and twenty percent (20%) of Seven Thousand and Seventeen (7,017) is One Thousand Four Hundred and Three (1,403)." The Board found that, "[t]he smaller of twenty percent (20%) of the qualified electors (which is 1,403) and One Thousand Five Hundred (1,500) is One Thousand Four Hundred and Three (1,403)." The Board found that 219 signatures had been removed from the petition, which initially had signatures of 1,579 qualified electors, and that "the remaining number of petitioning qualified electors is One Thousand Three Hundred Sixty (1,360)." Therefore, the Board found that the number

21

of signatures of qualified electors was "insufficient to require an election on the question of the issuance of the proposed bonds . . . ."

¶40.    Section 19-9-27 does not provide a means by which the signatures on the petition may be contested. Mississippi Code Section 11-51-75 provides that persons "aggrieved by a judgment or decision of the board of supervisors . . . may appeal within ten (10) days from the date of adjournment at which session the board of supervisors or municipal authorities rendered such judgment or decision, and may embody the facts, judgment and decision in a bill of exceptions," which is to be transmitted to and heard by the circuit court sitting as an appellate court. Miss. Code Ann. § 11-51-75 (Rev. 2012). However, Section 11-51-75 further provides:

> [T]hat no appeal to the circuit court shall be taken from any order of the board of supervisors or municipal authorities which authorizes the issuance or sale of bonds, but all objections to any matters relating to the issuance and sale of bonds shall be adjudicated and determined by the chancery court, in accordance with the provisions of Sections 31-13-5 to 31-13-11, both inclusive, of the Mississippi Code of 1972. And all rights of the parties shall be preserved and not foreclosed, for the hearing before the chancery court, or the chancellor in vacation. . . .

Miss. Code Ann. § 11-51-75 (Rev. 2012). Mississippi Code Section 31-13-3 (Rev. 2010) defines "bond" as "every form of written obligation that may be now or hereafter legally issued by any county . . . ." Therefore, a tax anticipation note meets the statutory definition of a bond pursuant to Section 31-13-3. As such, because Section 11-51-75 requires the chancellor to adjudicate "all objections to any matters relating to the issuance and sale of bonds . . . in accordance with the provisions of Sections 31-13-5 to 31-13-11," it is necessary

22

to examine those statutory provisions to determine whether the chancellor's refusal to

consider the signatures on the petition constitutes reversible error.

¶41.    Mississippi Code Section 31-13-5 provides the following:

> When any county, municipality, school district, road district, drainage district, levee district, sea wall district, or any other district or subdivision authorized to issue bonds shall take steps to issue bonds for any purpose whatever, the officer or officers of such county, municipality, or district charged by law with the custody of the records of same shall, if the board issuing same so determine by order entered on its minutes, transmit to said bond attorney a certified copy of all legal papers pertaining to the issuance of said bonds, including transcripts of records and ordinances, proof of publication, and tabulation of vote, if any, and any other facts pertaining to said issuance. Said bond attorney shall thereupon as expeditiously as possible examine said legal papers, pass upon the sufficiency thereof, and render an opinion in writing, addressed to the board proposing to issue said bonds, as to the validity of same; and if any further action on the part of said board is necessary or any further data is desired, he shall indicate what is necessary to be done in the premises in order to make said bonds legal, valid, and binding. When in his opinion all necessary legal steps have been taken to make the said bond issue legal, valid, and binding, he shall render a written opinion to that effect and shall transmit all legal papers, together with his opinion, to the clerk of the chancery court of the county in which the district or municipality proposing to issue said bonds is situated, or if said district embraces more than one (1) county or parts of more than one county, then to the chancery clerk of any one of said counties. The chancery clerk shall file the same, enter the same on the docket of the chancery court, and shall promptly notify the chancellor of the district in writing that said papers are on file and the cause has been docketed. The chancellor shall then notify the chancery clerk to set the matter for hearing at some future date, not less than ten (10) days thereafter, and the clerk shall give not less than five (5) days' notice by making at least one (1) publication in some paper published in the county where the case is docketed, addressed to the taxpayers of the county, municipality, or district proposing to issue said bonds, advising that the matter will be heard on the day named. If on the day set for hearing there is no written objection filed by any taxpayer to the issuance of said bonds, a decree approving the validity of same shall be entered by the chancellor; and if the chancellor be not present the clerk shall forward him the decree prepared by the state's bond attorney for his signature, and shall enter the said decree upon his minutes in vacation.

If no written objection is filed to the validation of the bonds, certificates of indebtedness, or other written obligations which are being validated, by any taxpayer to the issuance of same, then the validation decree shall be final and forever conclusive from its date, and no appeal whatever shall lie therefrom.

If at the hearing any taxpayer of the county, municipality, or district issuing said bonds appears and files, or has filed written objection to the issuance of said bonds, then the chancellor, or the chancery clerk if the chancellor be not present, shall set the case over for another day convenient to the chancellor, not less than ten days thereafter, and shall notify the bond attorney to appear and attend the hearing. On the hearing the chancellor may hear additional competent, relevant and material evidence under the rules applicable to such evidence in the chancery court, so as to inquire into the validity of the bonds or other obligations proposed to be issued, and enter a decree in accordance with his finding.

Where written objections have been filed to the validation but not otherwise, if either party shall be dissatisfied with the decree of the chancellor, an appeal shall be granted as in other cases, provided such appeal be prosecuted and bond filed within twenty (20) days after the chancellor enters his decree. However, no appeal shall lie in any case unless written objection has been filed to the validation of the bonds or other obligations by the time set for the validation hearing. The chancery clerk shall certify the record to the supreme court as in other cases, and the supreme court shall hear the case as a preference case.

Miss. Code Ann. § 31-13-5 (Rev. 2010).[4]

---

[4] The other code sections referenced by Section 11-51-75 include Section 31-13-7, which provides the following:

> If the chancellor shall enter a decree confirming and validating said bonds and there shall be no appeal by either party from said decree, or if on appeal the supreme court enters its decree confirming and validating said bonds or other written obligations, the validity of said bonds or other written obligations so issued shall be forever conclusive against the county, municipality, or district issuing same; and the validity of said bonds or other written obligations shall never be called in question in any court in this state.

Miss. Code Ann. § 31-13-7 (Rev. 2010). Section 31-13-9 governs the requirements of the county clerk in formalizing the issuance of the bonds by stamping, signing, and sealing the document, itself. Miss. Code Ann. § 31-13-7 (Rev. 2010). Section 31-13-11 governs court

¶42. Here, the chancellor's judgment validating the tax anticipation note stated that, "no written objections have been filed by any taxpayer to the said validation." Section 31-13-5 provides that "[i]f no written objection is filed to the validation of the bonds, . . . or other written obligations that are being validated, by any taxpayer to the issuance of the same, then the validation decree shall be final and forever conclusive from its date, and *no appeal whatever shall lie therefrom*." Miss. Code Ann. § 31-13-5 (Rev. 2010). So, if the chancellor were correct that no written objections had been filed, it would be proper for this Court to dismiss the appeal because, under Section 31-13-5, this Court has no jurisdiction to hear an appeal where no written objection had been filed in the chancery court. Nevertheless, Russell *did* provide a written objection to the validity of the tax anticipation note, which was marked as having been filed by the Humphreys County Chancery Clerk on December 15, 2014.

¶43. In part, Russell argued in his written objection that Section 19-9-27:

> [O]ffers a protection for the electors of the county should they feel the board is acting inappropriately. The code offers the chance for the electors to create a petition with 1500 signatures or 20%, whichever is less. We have a petition with over 2000 signatures (**1579 certified by the circuit clerk**[']**s office**). The code offers a second chance for both parties by providing for a special election. What the code does not offer is the right for the board of supervisors to unilaterally have signatures removed from the petition.

(Emphasis in original.) The chancellor sustained objections by the county attorney when Russell attempted to ask witnesses about the sufficiency of signatures on the petition; the chancellor ruled that the "time has gone by for that" and that "[w]e're just here on the validation of the bond issue today."

---

costs and bond attorney's fees. Miss. Code Ann. § 31-13-11 (Rev. 2010).

25

¶44. We find that the chancellor erred in ruling that the time to consider the sufficiency of the signatures had passed, because Section 11-51-75 states that "*all objections* to *any matters* relating to the issuance and sale of bonds *shall be* adjudicated and determined by the chancery court, in accordance with the provisions of Sections 31-13-5 to 31-13-11 . . . ." (Emphasis added.) Without reference to any statute or rule of evidence, and without providing this Court with insight into her reasoning, the chancellor declined to receive and/or consider any evidence regarding the sufficiency of the signatures on the petition, despite the statutory requirement to do so. Pursuant to Rule 101 of the Mississippi Rules of Evidence, all chancellors are required to govern their proceedings in accordance with the Rules of Evidence. M.R.E. 101. *See also* Miss. Code Ann. § 31-13-5 (Rev. 2010). In those proceedings, "[a]ll relevant evidence is admissible. . . ," unless otherwise provided by law. M.R.E. 402. Section 31-13-5 does not afford chancellors discretion in admitting and/or considering relevant evidence.

¶45. This Court has held that:

> To warrant reversal, two elements must be shown: error, and injury to the party appealing. Error is harmless when it is trivial, formal, or merely academic, and not prejudicial to the substantial rights of the party assigning it, and where it in no way affects the final outcome of the case; it is prejudicial, and ground for reversal, only when it affects the final result of the case and works adversely to a substantial right of the party assigning it. . . .

*Catholic Diocese of Natchez-Jackson v. Jaquith*, 224 So. 2d 216, 221 (Miss. 1969). *See also Forrest v. State*, 335 So. 2d 900, 903 (Miss.1976); *Gray v. State*, 799 So. 2d 53, 61 (Miss. 2001). The error occurred when the chancellor found that the time had passed for the presentation of evidence as to the sufficiency of the signatures on the petition. Not only was

it the correct time for Russell to present evidence of the sufficiency of the signatures on the petition, but it was the only time.

¶46. In today's case, it is impossible to conclude that the exclusion of evidence regarding the sufficiency of the signatures on the petition did not prejudice Russell's substantial rights. No one can know, absent the chancellor's having heard and considered the evidence, whether the petition contained a sufficient number of signatures.

¶47. Russell is asking that this Court reverse the "judgment validating the Tax Anticipation Note" and remand "so that the Tax Anticipation Note will be declared void." Because the chancellor erred in excluding evidence of the sufficiency of the signatures on Russell's petition, we reverse the judgment and remand this case to the chancellor. On remand, the chancellor should hear evidence regarding the sufficiency of the signatures. In light of our denial of the Board's Motion for Leave to File Supplemental Record, the parties may file evidence, if any, of the Board's having satisfied the tax anticipation note. While it appears to this Court that no legal purpose could be served by declaring a paid tax anticipation note void, the chancellor should determine the effect of the Board's satisfaction of the note on the disposition of this case.

## CONCLUSION

¶48. The Board's Motion for Leave to File Supplemental Record with an affidavit, to the effect that the tax anticipation note had been satisfied by the Humphreys County Board of Supervisors, is denied, because Rule 10(e) does not contemplate adding to the record material documenting what has occurred after the entry of a final judgment in the trial court. We hold

27

that the Humphreys County Board of Supervisors did not exceed statutory limits in obtaining the tax anticipation note. However, the chancellor's refusal at the validation hearing to consider the sufficiency of signatures of qualified electors, who signed a petition protesting the tax anticipation note, constituted error. We therefore reverse the judgment of the Humphreys County Chancery Court and remand this case to the chancellor for proceedings consistent with this opinion.

¶49.   **REVERSED AND REMANDED.**

**WALLER, C.J., RANDOLPH, P.J., KING, MAXWELL AND BEAM, JJ., CONCUR. DICKINSON, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY LAMAR AND COLEMAN, JJ.**

**DICKINSON, PRESIDING JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶50.   I agree with much of the majority's analysis and with its conclusion that this case must be remanded for a hearing and determination of whether the Humphreys County Board of Supervisors wrongfully removed signatures from the petition. But for two reasons, I strongly disagree with the majority's statement that "it appears to this Court that no legal purpose could be served by declaring a paid tax anticipation note void . . . ."[5]

¶51.   First, if the majority truly has concluded that there could be "no legal purpose," why are we are remanding the case? It seems to me a bit presumptuous for my friends in the majority to conclude gratuitously that, just because a note subject to statutory requirements has been repaid, there can be no legal consequences to those who violated a statute in issuing it. That issue was not raised, argued, or briefed by any party. Also, I doubt such an argument

_____

[5] Maj. Op. at ¶ 47.

would work for a bank teller who "borrowed" money from the till and paid it back the next day.

¶52.    What is more, the majority fails to consider that its "no legal purpose" conclusion serves as quite a dangerous precedent. Tax anticipation notes frequently are used by political subdivisions to make short-term loans in anticipation of revenues they anticipate receiving in a few months. The Legislature has set forth strict legal limits for these loans.[6] If, after these loans are repaid in a few months, there would be "no legal purpose" for a taxpayer or petitioner to challenge their legality, the statute requiring a public referendum is stripped of any purpose. Stated another way, today's majority stands as precedent for counties to borrow money and then pay it back, rendering any legal challenge fruitless because, as the majority puts it, there is "no legal purpose" in doing so.

¶53.    Finally, I cannot agree with the majority's conclusion that on remand, "the chancellor should determine the effect of the Board's satisfaction of the note on the disposition of this case."[7] That is a question of law that this Court should decide. And in my view—as a matter of law, and for the reasons stated above—repayment of the note should have no effect whatsoever on the disposition of this case. The disposition of this case should be a determination by the trial court of whether or not the county violated the law in issuing the

---

[6] *See* Miss. Code Ann. § 19-9-27 (Rev. 2012); Miss. Code Ann. § 31-13-5 (Rev. 2010); Miss. Code Ann. § 31-13-7 (Rev. 2010); Miss. Code Ann. § 27-39-303 (Rev. 2010); Miss. Code Ann. § 27-39-317 (Supp. 2015); Miss. Code Ann. § 11-51-75 (Rev. 2012)

[7] Maj. Op. at ¶ 47.

note.  If so, the validation should be reversed, and the chips should fall where they may.  For these reasons, I respectfully concur in part and dissent in part.

**LAMAR AND COLEMAN, JJ., JOIN THIS OPINION**.